**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DEBORAH COOK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 09-275-GPM |
| | ) |
| **IPC INTERNATIONAL CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Before the Court is Plaintiff Deborah Cook's motion for new trial, timely made pursuant to Federal Rule of Civil Procedure 59 (Doc. 102). She argues that three issues warrant a new trial: (1) inconsistency between the Court's "decisionmaker" jury instruction, and related answer to a jury question during deliberation, with the Supreme Court's decision in *Staub v. Proctor Hospital,* 131 S.Ct. 1186 (2011); (2) special verdict form given in violation of Federal Rule of Civil Procedure 49(a)(1)(B); and (3) admission of "hearsay documents" in violation of Federal Rules of Evidence 801, 802, 803, 804, 805, 901, and 608. The Court has carefully considered counsels' arguments and DENIES the Rule 59 motion.[1]

---

[1] The filings on this motion are clear and thorough. The Court finds oral argument on the motion unnecessary. This Order moots Plaintiff's motion for oral argument (Doc. 104).

## BACKGROUND

Mrs. Cook filed her complaint against Defendant IPC International Corporation on April 9, 2009, claiming sexual discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Doc. 4). IPC is a private security company that provided security for the Alton Illinois Mall, where Mrs. Cook worked as a mall security supervisor. In her sexual discrimination claim, she alleged that her "boss and supervisor," Charlie Spann, made sexually offensive comments to other women and told her he only wanted male security officers working with him. Mrs. Cook's retaliation claim is that when she complained to Charlie Spann about his offensive comments she was fired. Mrs. Cook explicitly pleaded in her complaint that the adverse employment action was termination.

IPC put on evidence that Mrs. Cook was not fired, but was offered a transfer to work at another mall. Both sides elicited testimony from IPC regional manager Scott Colburne that, though someone up the chain of command made the decision to offer Mrs. Cook a transfer, he was the IPC official that made the transfer offer to her. The jury heard evidence that this transfer would have been to one of two other malls, and would have included a pay-raise. Mrs. Cook stuck to her guns, however, and told both the jury and the Court she was terminated and that termination, not a transfer, was the "adverse employment action" forming the basis of both her sexual discrimination and retaliation claims.

At a sidebar, the Court asked Mrs. Cook's counsel who at IPC allegedly made the decision to terminate Mrs. Cook. Counsel answered that Charlie Spann, Mrs. Cook's direct supervisor, was the decisionmaker–but counsel went on to tell the Court that Charlie Spann was the decisionmaker because he fed false information about Mrs. Cook up the IPC chain of

command. Then the Court asked counsel if Mrs. Cook was attempting to proceed on a cat's paw theory of liability.[2] Counsel answered that IPC had obfuscated who the actual decisionmaker might have been when they failed to respond to certain interrogatories. After this sidebar, Mrs. Cook presented evidence that Charlie Spann had discriminatory intent and terminated her employment by cleaning out her locker and taking her keys. At a later sidebar, the Court told Plaintiff's counsel that Plaintiff had made no mention of a cat's paw theory in any papers; had failed to submit a cat's paw jury instruction; and had not pitched a cat's paw theory of liability to the jury. There was no evidence that Charlie Spann, the actor with the discriminatory animus, had any influence over any other IPC manager. The Court informed counsel that the Court therefore did not intend to give a cat's paw instruction.

During Defendant's direct examination of Scott Colburne, counsel objected to admission of an e-mail, purportedly written by Alton mall IPC employee Dane Spaulding to Scott Colburne at the behest of Charlie Spann. The e-mail complained to Mr. Colburne of misconduct Mrs. Cook allegedly committed at work. She objected that the document was hearsay and lacked foundation. Defendant argued that Plaintiff had already moved an unsigned version of the e-mail into evidence, and that the e-mail was an IPC business record, not offered for the truth of the

---

[2] "The existence of [] a link between an employment decision made by an unbiased individual and the impermissible bias of a non-decisionmaking co-worker has become known in this circuit as the 'cat's paw' theory. The name is based on an old fable in which a scheming monkey convinces an unwitting cat to fetch roasting chestnuts from a fire. The cat burns its paw that the monkey gets the chestnuts. In employment discrimination cases, the 'cat's paw' is the unwitting manager or supervisor who is persuaded to act based on another's illegal bias. With sufficient evidence, we permit juries to draw an inference that another employee's impermissible bias infected a decision when a plaintiff is able to show that the biased employee had some degree of influence over the ultimate decision." *Schandelmeier-Bartels v. Chicago Park District,* 634 F.3d 372, 380 (7th Cir. 2011).

matter asserted. IPC argued that the letter was evidence that Plaintiff did have issues with co-workers, whereas Mrs. Cook had testified that she did not have a problem with co-workers. The Court gave IPC the opportunity to lay a foundation for the e-mail, and IPC established that the witness, Mr. Colburne, received the document, kept the document on file, and passed the same to other IPC managers. Mr. Colburne testified that he kept the document as part of performance of his IPC duties and that it was the regular course of business to keep such documents on file. The Court overruled the objection and admitted the document. The Court reasoned on the record that Defendant was not trying to prove that the events alleged in the e-mail actually occurred (i.e. IPC was not asking to admit the documents as hearsay). The issue was not whether the litany of Mrs. Cook's transgressions was accurate in whole or in part. Rather, this was information that Mr. Colburne had in hand regarding Mrs. Cook. Commerce and industry are thankfully not subject to the Federal Rules of Evidence, as this would surely in short order arrest most forward progress. When Mrs. Cook was re-called as a rebuttal witness, she disputed the accusations in the Dane Spaulding e-mail.

Mrs. Cook also objected to the admission of a fax allegedly authored by Joseph Dumey, an IPC security officer at the Alton mall, on the same grounds as the Spaulding e-mail. The fax listed concerns that Mr. Dumey allegedly had about Mrs. Cook's employment at the Alton mall. Mr. Colburne testified that he received and read the fax, submitted it to IPC's corporate office, and relied upon it during the process of deciding whether to transfer Mrs. Cook to another mall. Mrs. Cook's counsel pointed out to the jury, in the form of an objection to Defense questioning, that it was not clear that Joseph Dumey had actually authored the fax. The fax was admitted for the same reason the e-mail was admitted: Mr. Colburne was free to use or disregard this

information as he saw fit.

That the Defense did not call Dane Spaulding was the subject of an objection during the formal jury instruction conference. Plaintiff had submitted an instruction modeled on the Seventh Circuit's Pattern Civil Jury Instruction No. 1.19 to inform jurors that they could, but were not required to, assume that the testimony of certain IPC employees not called by the Defense would have been unfavorable to the Defendant.[3] The Court declined to give such an instruction because co-worker statements had been admitted, not to assert the truth of the allegations against Plaintiff, but as IPC business records which were kept and considered by IPC management.

At the formal jury instruction conference, Plaintiff also objected to the Court's instruction 18 and the Court's special verdict form regarding a decisionmaker. Instruction 18 stated as follows:

> In order to find for the Plaintiff Deborah Cook on Claim 1, Claim 2, or both, you must find that a decisionmaker for IPC fired Plaintiff either because she was female or because she complained about sexually harassing comments. The decisionmaker is the IPC employee who was responsible for the decision to terminate Plaintiff. Here, Plaintiff has alleged that her supervisor Charles Spann was the IPC decisionmaker who terminated her employment. In order to find for the Plaintiff on Claim 1, Claim 2, or both, you must find, by a preponderance of the evidence, that Charles Spann was the IPC decisionmaker responsible for Plaintiff's termination.

(Doc. 82). The "decisionmaker" verdict form read:

---

[3] Plaintiff's proposed jury instruction read: "Jolly Wiel, Michael Crane, Dane Saunders, and John Bartosiewicz were mentioned at trail but did not testify. You may, but are not required to, assume that Jolly Wiel's, Michael Crane's, Dane Saunders', and John Bartosiewicz's testimony would have been unfavorable to Defendant" (Doc. 99). During the jury instruction conference, Plaintiff referenced Dane *Spaulding*. The other individuals in the proposed instructions were purportedly mentioned as sources of negative information about the Plaintiff, given to IPC.

> Do you, the Jury, find that Charles Spann was the IPC International Corporation decisionmaker who terminated Deborah Cook's employment? Yes _____ No _____ If your answer to the above question is "No" then you will not answer any additional questions. All jurors should sign the verdict form. If your answer is "Yes" then proceed to the following questions:

(Doc. 83). The marked copy of Instruction 18 noted that it was for the purpose of clarifying employer liability in a Title VII claim, citing *Schandelmeier-Bartels v. Chicago Park District,* 634 F.3d 372, 378-79 (7th Cir. 2011) ("[Plaintiff] had to provide direct or circumstantial evidence that the *decision-maker* has acted for a prohibited reason. A decisionmaker is the person responsible for the contested decision."). The Court responded to Plaintiff's objection, reasoning on the record that Plaintiff had only adduced evidence that Charlie Spann had discriminatory animus, and, consequently, it would be very easy for the jury to be confused and believe that a cat's paw theory was in play.

During deliberation, the jury sent out a question to the Court asking for clarification on the "decisionmaker" verdict form. The jury asked if they needed to find that Charlie Spann was "the" decisionmaker meaning the "sole" decisionmaker or "a" decisionmaker (Doc. 96). The Court heard argument from counsel on the question: Plaintiff asked for "a" decisionmaker; Defendant asked for "sole" decisionmaker. The Court returned an answer to the jury that "he" meant the "sole" decisionmaker (Doc. 96). The jury, answering question two on the Special Verdict, found that Mr. Spann was not the decisionmaker who fired Mrs. Cook, and the Court entered judgement for the Defendant. This timely motion for a new trial pursuant to Rule 59 followed.

DISCUSSION

"Rule 59(e) allows a court to amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Heyde v. Pittenger,* 633 F.3d 512, 521 (7th Cir. 2011). Rule 59 movants "bear a particularly heavy burden". *Marcus & Millichap Inv. Services of Chicago, Inc., v. Sekulovski,* No. 10-1352, 2011 WL 1004697, at *10 (7th Cir. March 23, 2011), *quoting Lewis v. City of Chicago Police Dept.,* 590 F.3d 427, 444 (7th Cir. 2009). Here, Mrs. Cook argues that the following errors of law occurred during the trial that provide grounds for setting aside the jury's verdict: (1) the "sole" decisionmaker instruction, verdict form, and answer given in response to the jury's written question–in that the Court's interpretation of the "decisionmaker" conflicts with the Supreme Court's analysis in *Staub v. Proctor Hospital,* 131 S.Ct. 1186 (2011); (2) special verdict forms given to the jury in violation of Federal Rule of Civil Procedure 49(a)(1)(B); and (3) the admission of the e-mail allegedly written by Dane Spaulding and the fax allegedly written by Joseph Dumey in violation of Federal Rules of Evidence 801, 802, 803, 804, 805, 901, and 608.

*Staub* and the Sole Decisionmaker

Mrs. Cook argues that the "sole" decisionmaker instruction cannot be reconciled with *Staub.* In *Staub,* the Supreme Court considered employer liability under the Uniformed Services Employment and Reemployment Rights Act (USERRA), which, just like Title VII, requires that an improperly considered factor be a "motivating factor" in the employer's adverse action against the plaintiff. Under USERRA, membership or obligation to a uniformed service is the "factor" which should not improperly motivate the employer, while under Title VII, those factors are of course race, color, religion, sex, or national origin. When the employer-official who actually

"makes the decision to take an adverse employment action" has no discriminatory animus himself, but rather "is influenced by previous company action that is the product of [discriminatory] animus in someone else", the ambit of what is and is not a "motivating factor" is not always clear. *Staub,* 131 S.Ct. at 1191. Such a theory of liability in an employment discrimination case–where the plaintiff "seeks to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision"– is commonly known as a "cat's paw" theory. *Id.* at 1190. Staub, the plaintiff suing his employer under USERRA, claimed that his immediate supervisors issued disciplinary warnings to him because of his military obligations, and that, because of those improperly-motivated accusations, the vice president of human resources–whom Staub admitted had no improper animus–made the decision to terminate Staub's employment. *Id.* at 1189.

Under the Seventh Circuit's cat's paw precedent, the "case could not succeed unless the non-decisionmaker exercised such 'singular influence' over the decisionmaker that the decision to terminate was the product of 'blind reliance.'" *Id.* at 1190, *citing Staub v. Proctor Hospital,* 560 F.3d 647, 659 (7th Cir. 2009). The Supreme Court reversed, finding that "if a supervisor performs an act motivated by anti-military animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Staub,* 131 S.Ct. at 1194 (emphasis in original). At trial, Staub specifically deployed the cat's paw theory. 560 F.3d at 655 ("Staub presented his case only as a cat's paw matter."). The district court gave a cat's paw instruction which read in pertinent part:

> Animosity of a coworker toward the Plaintiff on the basis of Plaintiff's military

> status as a motivating factor may not be attributed to Defendant unless that co-worker exercised such singular influence over the decision-maker that the co-worker was basically the real decision maker. This influence may have been exercised by concealing relevant information from or feeding false information or selectively-chosen information to the person or person who made the [decisionmaker]

560 F.3d at 657. That instruction no longer holds given the Supreme Court's rule requiring both: (1) non-decisionmaker animus that is intended to cause adverse employment action against the plaintiff; and (2) an act by the non-decisionmaker that is a proximate cause of the ultimate employment action. 131 S.Ct. at 1194.

In her Rule 59 motion, Mrs. Cook looks to the proximate cause piece of the Supreme Court's *Staub* decision. For the *Staub* Court, "the requirement that the biased supervisor's action be a causal factor of the ultimate employment action incorporates the traditional tort-law concept of proximate cause." 131 S.Ct. at 1193. A post-*Staub* cat's paw jury instruction therefore requires that some act taken by the supervisor with discriminatory animus directly relates to the adverse employment action. *Staub v. Proctor Hospital,* Nos. 08-1316, 08-2255, 08-2402, 2011 WL 1979719, at *2 (7th Cir. May 23, 2011). The Court reasoned that, in a cat's paw scenario, the decisionmaker's exercise of his or her own judgment in deciding whether to fire plaintiff does not "automatically render[] the link to the supervisor's bias 'remote' or 'purely contingent.'" 131 S.Ct. at 1192. The supervisor's action must be a proximate cause of the decision-to-terminate inasmuch as "[p]roximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect." 131 S.Ct. at 1192 (internal quotations omitted). There must be some link between the supervisor's discriminatory act and the decisionmaker's decision to terminate

the plaintiff. That is how proximate cause comes into the *Staub* analysis–the supervisor's discriminatory act must be a proximate cause of plaintiff's termination, though it need not be *the* proximate cause of plaintiff's termination. In fact, when it comes to the cat's paw theory of employer liability, the supervisor's discriminatory act could not possibly be the only proximate cause of termination, as "[t]he decisionmaker's exercise of judgment is *also* a proximate cause of the employment decision." 131 S.Ct. at 1192 (emphasis in original).

So, for a successful cat's paw case, plaintiff must prove that the non-decisionmaker with discriminatory animus performs an act that is *a* proximate cause of the decision to take adverse employment action against the plaintiff, but it need not be *the* proximate cause. If Ms. Cook had pleaded or argued a cat's paw case, that conception of proximate cause should rightly have been included in the jury instructions. The lynchpin here is that *Plaintiff did not bring, argue, nor ask for instructions on a cat's paw theory. Staub* is inapposite.

Plaintiff never appealed to the cat's paw theory–the Court asked Plaintiff whether she was trying to do so, and Plaintiff demurred. Plaintiff did not pitch the cat's paw theory in any pretrial filing, in any proposed jury instruction, or in any pre-trial or trial conference. She did not protest when the Court said, after the trial was underway and proposed instructions had earlier been submitted, that it would not instruct on a cat's paw theory. She never developed or argued the theory that the transfer offer was the adverse employment action and that Charlie Spann somehow funneled sexually-discriminatory-fueled complaints up the ladder at IPC which led to the transfer offer.[4] Mrs. Cook insisted she was fired, that her termination, not the transfer offer,

---

[4] This is the only way Plaintiff could have made a cat's paw argument on the evidence presented. However, even if Plaintiff *had* argued that the transfer offer was IPC's adverse

was the adverse employment act, and that Charlie Spann fired her. She did not provide evidence that any other IPC supervisor or official made the decision to fire her or that another IPC supervisor's discriminatory actions was a cause of her termination, so the Court did not leave the jury free to speculate that it was some 'other' figure at IPC who decided to terminate Plaintiff as a proximate cause of Charlie Spann's discriminatory animus.

Given the evidence presented at trial, the only way that the jury could impute liability to IPC without employing the cat's paw theory was if they found Charlie Spann was the sole decisionmaker. The Court's instruction (and the Court's answer in response to the jury's "a" or "sole" decisionmaker question) laid out the only cognizable theory of IPC liability given the Plaintiff's argument and evidence.

<u>Special Verdict Forms and Rule 49</u>

Mrs. Cook's discrimination claim against IPC could not succeed without an IPC decisionmaker. She identified Charlie Spann as that decisionmaker. Given the facts presented to the jury, IPC's liability hinged on whether they believed Mrs. Cook's argument that Charlie Spann made the decision to fire her. Accordingly, the Court issued a "decisionmaker" verdict form (Doc. 83), asking the jury to determine whether Charlie Spann decided to fire Plaintiff.

In her Rule 59 motion, Mrs. Cook argues that the Court's special verdict form violated Rule 49(a)(1)(B) because it essentially rewarded Defendant's failure to disclose individuals other than Charlie Spann and Scott Colburne who were "involved in the process leading up to the termination of plaintiff's employment" (Doc. 102, quoting Plaintiff's interrogatory). She

---

employment action, there was scant evidence on the record that the transfer offer was an adverse employment act.

contends that the Court's special verdict form required her "to prove that one or more *unidentified* individuals were under the control or influence of Spann" (Doc. 102, emphasis in original).

This is simply not what the "decisionmaker" verdict form asked the jury to do. The form asked the jury to decide a fact necessary to Defendant's liability under the circumstances: whether Charlie Spann–the supervisor Mrs. Cook claimed had illegal animus and who, according to Mrs. Cook, terminated her employment–was the person who made the decision to take adverse employment action against her due to her gender. If the jury found Charlie Spann did not make the decision to fire Mrs Cook, there was no way IPC could be found to have discriminated against her. The evidence and argument *only* supported a discrimination claim where termination was the adverse employment action and Charlie Spann was the IPC decisionmaker. The verdict form articulated the only factual scenario that could support a verdict for Plaintiff given the pleadings and evidence. The Court heard all the arguments and evidence presented at trial, and felt it necessary to clarify and "articulate the issues of fact subsidiary to the legal questions" for the jury. *United States v. Kim,* 111 F.3d 1351, 1360 (7th Cir. 1997), *quoting Byrne v. Board of Educ., School of West Allis-West Milwaukee,* 979 F.2d 560, 568 (7th Cir. 1992). In the circumstances of this trial, the decisionmaker issue was a "factual issue[] essential to judgment." The verdict form did not violate Rule 49.

Admission of Hearsay Documents

Mrs. Cook argues that admission of the e-mail allegedly written by Dane Spaulding and the fax allegedly written by Joseph Dumey was the admission of impermissible hearsay and warrants a new trial. However, these documents were not admitted to prove the truth of the

allegations within them. The point was not that Debbie Cook had allegedly misbehaved at work; the point was that co-workers at the Alton mall did complain to IPC about Debbie Cook. Mrs. Cook testified that she had no interpersonal issues with co-workers, but the fax and the e-mail say otherwise. IPC's regional manager Scott Colburne testified that those documents factored into IPC's decision to transfer her to another mall. Corporate America need not nod to the Federal Rules of Evidence when it considers documents. The point at trial was that IPC did receive these documents and did consider them. Scott Colburne testified that these reports of alleged employee misconduct were regularly kept by IPC management. The documents were properly admitted, and their admission certainly does not constitute a clear error of law warranting Rule 59(e) relief–which is an extraordinary remedy reserved for the exceptional case. *See Foster v. DeLuca,* 545 F.3d 582, 584 (7th Cir. 2008).

The only evidence in this case of sexual discrimination or retaliation is attributable to Mr. Spann. There is not so much as a whiff of evidence that anyone else in IPC's corporate hierarchy paid any mind to Mrs. Cook's gender. The offending e-mail and fax are free of gender based comments. In the end the jury just did not believe Mrs. Cook's theory of the case.

## CONCLUSION

For the reasons discussed above, Plaintiff Deborah Cook's "Rule 59 Motion for a New Trial" (Doc. 102) is DENIED.

**IT IS SO ORDERED.**

DATED: June 2, 2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge